Coös,
Nov. 2, 1909.

### BOURASSA *v.* GRAND TRUNK RAILWAY CO.

What precautions one exposed to danger is required to take for his own
protection depends upon the facts of the particular case ; and the ques-
tion is properly submitted to the jury unless upon the evidence all fair-
minded men would hold the conduct negligent.

Where there is direct evidence as to the care exercised by a person in a given
situation, proof of his habitual prudence under like circumstances is prop-
erly excluded; but the erroneous admission of such evidence does not fur-
nish cause for setting aside a verdict, if it appears to have been immaterial
and harmless.

A verdict is not set aside for erroneous instruction when it is apparent,
upon a consideration of the whole charge, that the jury were not misled
thereby.

An exception to instructions is unavailing unless the attention of the court
is specifically directed to the particular error claimed.

Where a person walking along a railroad track is injured by a train approach-
ing from behind, evidence that the bell and whistle were not sounded at
crossings in the vicinity, over which the train passed immediately before
the accident, may be competent upon the question of his care.

CASE, for negligence. Trial by jury and verdict for the plain-
tiff. Transferred from the December term, 1908, of the superior
court by *Pike*, J., on the defendants' exceptions to the admission
of evidence, to certain instructions to the jury, and to the denial
of their motions for a nonsuit and the direction of a verdict in
their favor.

*Henry F. Hollis* (by brief and orally), for the plaintiff.

*Rich & Marble* (*Mr. Marble* orally) and *Drew, Jordan, Shurtleff
& Morris*, for the defendants.

PARSONS, C. J. In support of their motion for a verdict, the
defendants do not question the sufficiency of the evidence to
authorize a finding of their fault as cause for the injury. The
claim is that the plaintiff fails for lack of proof of his care. He
was walking upon a branch railroad track, and proceeded for a
distance of 220 feet without looking backward to see if a train
was approaching, and did not observe the shifting engine which
came up behind him until it was too late for him to escape injury.
The evidence upon which the plaintiff contends care may be

found is, that the portion of the track upon which he was walk-ing was, to the knowledge of the defendants, commonly used by many persons as a pathway; that before entering upon the track, he looked up the track and saw no train; that the distance over which the track was open to observation was such that no train not then in sight, running at a speed reasonable under all the cir-cumstances or usual upon this track, could overtake him before he reached the point where he proposed to leave the track; and that he had reasonable ground for believing, and did believe, that no train would pass over the track at that hour of the day.

Whether the average man walking upon a railroad track under these circumstances would look around before he had traveled 200 feet at three miles per hour, or take other precautions which the plaintiff did not take to ascertain the approach of danger, is a question of fact which was properly submitted to the jury. *Stearns* v. *Railroad, ante,* 40; *Brown* v. *Railroad,* 73 N. H. 568; *Minot* v. *Railroad,* 73 N. H. 317; *Davis* v. *Railroad,* 70 N. H. 519; *Mitchell* v. *Railroad,* 68 N. H. 96; *State* v. *Railroad,* 52 N. H. 528. How often safety would require one in the path of a possible train to look behind him to protect himself would plainly depend upon all facts of the particular case; and the answer, being an inference to be drawn from facts proved, must be returned by the triers of fact. It cannot be determined as a rule of law, without holding that the fact of collision between a person on foot and a railroad train under all circumstances conclusively establishes the negligence of the former. While the defendants contend for this proposition, its principle is so foreign to the law of negligence as administered in this jurisdiction that its discus-sion is unnecessary. *Stearns* v. *Railroad, ante,* 40, 42, 43; *Gaha-gan* v. *Railroad,* 70 N. H. 441, 444, 445; *Bass* v. *Railway,* 70 N. H. 170; *Roberts* v. *Railroad,* 69 N. H. 354.

The plaintiff was injured while returning from the place of his daily employment and described his usual course of travel, which included walking over the stretch of track upon which he was injured. Subject to exception, in answer to the question "Did you do anything to see if the cars were coming?" he was per-mitted to testify "I looked every time when I went upon the crossing." Later in his examination he testified: "Eight or ten feet before I took the line, I stopped and looked to see if a train was coming." The defendants excepted to the inquiry as to the plaintiff's usual custom, and now argue that the evidence was inadmissible because there was direct evidence that upon the occa-sion in question the plaintiff did look. *Tucker* v. *Railroad,* 73 N. H. 132, 133, and *Minot* v. *Railroad,* 73 N. H. 317, 320, are relied upon in support of the exception. In the former case it

was said in reference to the conduct of the injured party, citing *Smith* v. *Railroad*, 70 N. H. 53, " upon this question his custom and habit is evidence, and from such evidence the exercise of care may be found if it does not conclusively appear that in the particular instance such custom was not observed " ; while in the latter the exclusion of similar evidence was approved, the evidence as to what the injured person did as she approached the track being direct and uncontradicted. If in this case it is conceded to have conclusively appeared that the plaintiff looked, the evidence of habit tending to show that he did look was immaterial; and while after that fact appeared evidence of habit could properly have been excluded on this issue, its admission upon a point not in controversy could not have harmed the defendants. It was, however, admissible upon another issue in the case raised by the defendants. The plaintiff testified that from his knowledge of the use of the track by the defendants he had no expectation a train would pass during the time he proposed to use it. The defendants argued that if he looked, as he testified, he could not have entertained this belief. The plaintiff's explanation that he looked as a matter of habit whenever he went upon the track was a competent answer to this argument.

Subject to exception, the jury were instructed as follows: " Then the plaintiff says that they did not ring the bell or blow the whistle. It is true that there is no statutory duty on the part of the defendants to ring the bell or blow the whistle under such circumstances. On occasions of this kind they are called upon to blow the whistle when they are coming to crossings, and to ring the bell when they go over crossings. But they are called upon to do whatever ordinary prudence would call them to do to avoid doing harm to trespassers. They can do it in any way they see fit, but they have got to act with the prudence of the average man under the same circumstances. If prudence called upon them to ring the bell and blow the whistle, then they should do that. If it called upon them to stop the engine to avoid killing people, they have got to do, at any rate, whatever the average man would do under the same circumstances, with the appliances that were at hand. . . . You understand, gentlemen of the jury, that the doing or failure to do any one particular thing does not constitute negligence. You have to consider the plaintiff's conduct and the defendants' conduct, and say whether they used ordinary care by what they did or failed to do. I do not say that any one particular act was negligence or not; it is for you to say whether what they did or did not do came up to the standard of ordinary care under the circumstances."

The defendants appear to have excepted generally to the language quoted. They now base their objection upon the third sentence: " On occasions of this kind they are called upon to blow the whistle when they are coming to crossings, and to ring the bell when they go over crossings." Taken by itself, this language might be interpreted to mean that for the purposes of this case the defendants, though not required by statute to do so, were as matter of law required to whistle and ring at crossings, and consequently in fault and guilty of negligence toward the plaintiff if they failed to do so. If the charge is correctly reported, the sentence is doubtless an inadvertence. In view of the other portions of the charge quoted, the court could not have intended to tell the jury that the failure to do certain acts was negligence. The presiding justice expressly told the jury that the doing or failing to do any particular act did not constitute negligence, and expressly warned them that he did not say any one particular act was negligence and that it was for them to say whether what was done constituted ordinary care. This was equivalent to telling the jury that if he had been understood to say any act done or omitted constituted negligence, he did not intend to be so understood. It does not appear probable or even possible that the meaning of the court could have been misunderstood, or the jury have failed to understand that the rule given them for their guidance was the conduct of the average man under the circumstances.

But not having specially called attention to this expression of which they now complain, so that the court might have corrected what appeared to have been said, the defendants take nothing by their general exception. *Harris* v. *Smith*, 71 N. H. 330 ; *Wheeler* v. *Railway*, 70 N. H. 607, 615 ; *Emery* v. *Railroad*, 67 N. H. 434, 435 ; *Edgerly* v. *Railroad*, 67 N. H. 312 ; *Rowell* v. *Chase*, 61 N. H. 135. " When an exception is taken to instructions which are erroneous, upon a point which, if made known at the time, would have been rectified, the point must be stated so that the court can understand the ground of objection and have an opportunity to correct the error. If not stated, the objection will be regarded as waived. It would be unjust to allow a party to lie by and take the chances of a verdict in his favor, and if defeated, avail himself of an exception which might have been obviated if seasonably known." *Haines* v. *Insurance Co.*, 59 N. H. 199, 200. " The duties of the bench and the bar are to some extent reciprocal. If the judge makes a mistake, and counsel perceiving it do not call his attention to it, pointing out an error which he may instantly correct, a verdict will not be disturbed on account of the error." *Paine* v. *Railway*, 58 N. H. 611, 615.

The defendants excepted to evidence of the failure of the defend-

ants to blow the whistle and ring the bell of the locomotive at the street crossings above the point where the plaintiff was injured. Within the distance of 870 feet traversed by the locomotive immediately before the plaintiff was struck were three street crossings. If the customary signals were given, the jury might have thought that by the exercise of care the plaintiff could not have failed to have learned of the engine's approach in season to have escaped injury. The evidence was competent and material upon the question of his care. It might also be found that the crossing warnings were sufficient warning for persons whom the defendants ought to have anticipated would be walking on the track from Pleasant street to School street. That the defendants did not do what it might be found ordinary care on their part required was a vital point in the plaintiff's case; and the evidence cannot be excluded because the defendants were required by statute to so act for the benefit of others, or because such failure to act is not of itself complete proof of the plaintiff's case. If the defendants did not whistle or ring the bell at the crossings, ordinary care might require special precautions or other signals for the protection of persons whom the defendants had reason to believe they might otherwise injure. In the circumstances of this case there was no error in permitting proof that the customary crossings signals were not given.

*Defendants' exceptions overruled.*

All concurred.