Hillsborough, }
Feb. 6, 1917. }

### ROBERT S. MORRISON *v.* ALBERT W. NOONE.

Declarations by a deceased owner as to the boundary of his land and those made by one employed thereon, since deceased, are admissible, if the declarants had means of knowledge and no interest to misrepresent.

The testimony of a witness in a former proceeding, since deceased, is inadmissible against one who neither was a party thereto nor had the right of cross-examination.

No exception lies to a ruling permitting a party, who has been called to testify by the opposite party, to be cross-examined by his own counsel.

An objection that an issue was improperly submitted to the jury because of the lack of evidence was denied when made for the first time after verdict, and it not appearing that the deficiency could not be supplied.

PETITION, for the assessment of damages under the flowage act, P. S., *c.* 142, *ss.*, 12–19. Trial by jury and verdict for the defendant. A bill of exceptions was allowed by *Branch*, J., at the May term, 1916, of the superior court.

Plaintiff showed title to the premises since 1903 by deeds dating back to 1851. The defendant claimed the right to flow the plaintiff's

land by virtue of a verbal agreement made in 1854 by his father, his predecessor in title, with the owners of land above the dam, at which time a letter "H" was cut in a rock near the pond above the dam to mark the height to which the parties agreed that Noone might raise the water. Defendant also claimed a prescriptive right to flow the plaintiff's land.

The plaintiff called the defendant as a witness and excepted to cross-examination of the defendant by his own counsel which was allowed by the court. The plaintiff also excepted to testimony of the defendant that his father told him that the mark "H" was the point to which he had the right to raise the water, and to what one Gallup, at one time superintendent of the mill, since deceased, told him as to the placing of the mark upon the rock. Subject to exception, the defendant also introduced the testimony of Gallup, given in 1899 or 1900, in a suit, *Noone* v. *Peterborough*, in relation to the same subject, and to the testimony of one Wallace as to what Gallup told him about the mark "H." Gallup's statement as testified to by the witnesses was in substance that the letter "H" was cut by him upon the rock by agreement of all concerned to establish the point to which the water might be raised, as to which there had been controversy between Noone and a Mr. Shedd; that Shedd, Noone, Upton, Fife and several others were present, some five or six in all. Shedd and Upton owned lands bordering the stream above the dam. The plaintiff's predecessors in title were not directly referred to in the defendant's evidence, but it appeared from evidence subsequently introduced by the plaintiff that one of them knew of the mark, although according to the testimony he explained it as marking the point the water had once reached. Other facts are stated in the opinion.

Plaintiff's counsel in argument said he knew certain of the witnesses and wished the jury knew them. Subsequently he apologized for the remark and the jury were directed by the court to disregard it. Plaintiff also excepted to a statement by defendant's counsel that sprout land was worth only five dollars an acre, no evidence having been introduced upon the subject.

*Charles J. Hamblett, Marshall D. Cobleigh* and *John R. Spring,* for the plaintiff.

*Jonathan Smith* (of Massachusetts), and *James F. Brennan,* for the defendant.

Parsons, C. J.   The exception to the cross-examination of the defendant by his counsel, the defendant being called as a witness by the plaintiff, does not present anything for consideration by this court.   *Moody* v. *Perley, ante,* 17, 22; *Gerrish* v. *Gerrish,* 63 N. H. 128.

The exceptions to statement of matters not in evidence by counsel in argument are well founded.   Unless the matter so introduced appears clearly immaterial (*Kuba* v. *Devonshire Mills, ante,* 245) or the error was cured by withdrawal and apology at the time (*Bullard* v. *Railroad,* 64 N. H. 27), the exceptions destroy the verdict. But as it is not probable the error will be repeated at another trial, which is later found necessary, the matter of argument is not now further considered.

It is contended that there was no direct evidence connecting the plaintiff's grantors with an agreement under which the defendant claimed the right of flowage and they were not named in the evidence upon which the defendant relied to establish the agreement.   If this is to be understood as a claim that this issue was improperly submitted to the jury because of the lack of evidence to support it, the objection comes too late, being made for the first time after verdict; which is assumed to have been the case, as no exceptions are claimed to the submission of the issue or to the instructions given the jury.   *Farnham* v. *Anderson,* 74 N. H. 405.

The remaining exceptions relate to evidence of statements made by the defendant's father and one Gallup, both now deceased, as to the mark "H" upon a rock upon the shore of the pond.   The defendant claimed by prescription, and the statement that his father claimed that his right was to raise the water to the mark "H" was original evidence of the claim made by the defendant's ancestor in title.   The evidence was also admissible as the declaration as to the boundary of his real estate right by one now deceased having at the time the means of knowledge and no interest to misrepresent. *Lawrence* v. *Tennant,* 64 N. H. 532.   Though Gallup was not an owner of the land, it was in evidence that he was connected with the mill for several years as superintendent.   It could be found he had the means of knowledge and was without interest to misrepresent and after his decease his statements identifying the mark on the rock as a monument bounding the right of flowage were admissible. *Keefe* v. *Railroad,* 75 N. H. 116, 118, 119.

But the defendant attempted to prove by the evidence of Gallup's statements not merely that the mark on the rock bounded the right

of flowage but an agreement, between the owners of the water power and the lands subject to flowage, as to the extent of the flowage right. Gallup's story was in substance that there had been a controversy between the owner of the mill, Joseph Noone, and one of the land-owners, a Mr. Shedd, and that by direction of all the parties concerned and in their presence, he put the mark on the rock as establishing the high water mark of the flowage right. The statements recited by the witnesses were no part of the act, but were accounts of the transaction given long afterward by Gallup and were not admissible under the *res gestæ* exception. At the time of the trial Gallup was dead and the evidence from one witness as to his statement supporting the claim of agreement as to the line of flowage was the testimony of a stenographer who read the transcript of notes of Gallup's testimony taken at a hearing before county commissioners in 1899 or 1900 in a suit entitled, *Noone* v. *Peterborough*. If the plaintiff then the owner of the land to which the present controversy relates was a party to or so connected with the suit, *Noone* v. *Peterborough*, as to have had the right to cross-examine Gallup when the testimony now introduced was given, Gallup being dead, the evidence of what his testimony was at the prior trial, the same question being now in issue, was competent. But unless these facts appear the statements of Gallup were not rendered competent evidence against the plaintiff because given under oath in a judicial proceeding. *Orr* v. *Hadley*, 36 N. H. 575; *Bailey* v. *Woods*, 17 N. H. 365, 372; 1 Gr. Ev., ss, 163, 164. It does not appear that the plaintiff cross-examined Gallup when he testified, or had a right to do so, or was in any way connected with the proceeding, *Noone* v. *Peterborough*.

But it is also claimed that all the statements of Gallup were admissible as declarations in reference to a real estate boundary made by a person now deceased, having the means of knowledge and no interest to misrepresent. There are numerous cases discussing this question from *Shepherd* v. *Thompson*, 4 N. H. 213, to *Keefe* v. *Railroad*, 75 N. H. 116. The foundation of this exception to the general rule against hearsay is the English rule admitting the declarations of deceased persons as to opinion in reference to public boundaries, which here is extended so as to apply to private as well as public bounds. *Great Falls Co.* v. *Worster*, 15 N. H. 412, 437; *Smith* v. *Powers*, 15 N. H. 546, 563, 564; 2 Wig. Ev., s. 1563. In all the cases the declaration admitted has been one identifying a particular mark as a bound or as to the location of a boundary line. In no case has it been attempted to prove independent facts as to the

title by such declarations.    That such evidence is excluded by the general rule against hearsay appears to be held in Massachusetts. *Morrill* v. *Titcomb*, 8 Allen 100; *Ware* v. *Brookhouse*, 7 Gray 454.

As already suggested, the evidence of Gallup's statements was offered to prove not an acknowledged bound but an agreement as to the extent of the right.    If what is said in *Lane* v. *Hill*, 68 N. H. 275, and *Keefe* v. *Railroad*, 75 N. H. 116, 118, 119, establishes the admissibility of all classes of statements made by persons now deceased having the means of knowledge and no interest to misrepresent, a point upon which no opinion is now expressed, the primary basis upon which such evidence is admitted is proof that the deceased declarant had the means of knowledge of the fact to which his declaration relates.

If from the fact that Gallup was superintendent of the mill for five years, it could be found he had the means of knowing the bounds of the mill's flowage right as exercised or claimed, such fact is no foundation for a finding of knowledge by him as to the placing of the mark upon the rock, or the fact of agreement between all parties in interest.

In what he did he was acting, according to his statements, not in the course of his duty as superintendent but "as agent for all parties concerned." So far as appears all the evidence of his means of knowledge of the transaction comes from his own statement.    To render such a statement admissible, there must be other evidence tending to show declarant's knowledge of the facts to which it relates.    It is at least significant that the defendant's father who had the means of knowledge and must have known all about the transaction made no reference thereto in the statement of which the defendant testified.    Joseph Noone's statement that the letter "H" was the high water mark where he owned was competent.    Gallup's statements of the transaction under which the defendant claims title are not competent in the absence of some evidence that he had knowledge of the matters to which they relate.    Whether there are other objections to their admission, it is not now necessary to decide. As the incompetent evidence was the only evidence tending to support the issue of a right by agreement, a motion by the plaintiff for a verdict upon this issue, if one had been seasonably made, might now be granted.    As such motion was not made, a new trial can be had on each issue.

*Verdict set aside: new trial ordered.*

All concurred.